UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

Jane Doe,

    *Plaintiff,*

v.

University of Pittsburgh,

James Shaw, Anil Gupta,

John McDowell, Tom

Ricketts, Jennifer Whiting

and John Does 1-7,

    *Defendants.*

FILED - LN
March 6, 2017 4:37 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: clw /    SCANNED BY: /ll/ 3/7

**1:17-cv-213**
**Janet T Neff**
**U.S. District Judge**

---

Preliminary Statement and Introduction

1. This is a civil action for declaratory, injunctive, equitable and monetary relief for injuries sustained by the plaintiff as a result of violations of the First, Fourth and Fourteenth Amendments to the Constitution of the United States; Article One, Sections One and Eight of the Pennsylvania Constitution; the Stored Communications Act; the Computer Fraud and Abuse Act; the Wiretap Statutes; the Pennsylvania Electronic Surveillance Control Act; and the torts of invasion of privacy and fraudulent misrepresentation and concealment.

1

2. The plaintiff received a Ph.D. in philosophy and a Master's Certificate in the Study of Women, Gender and Sexuality in April 2014.

3. The defendants that are named in this complaint are faculty at the University of Pittsburgh.

### Jursidiction and Venue

4. This is an action to redress violation of the plaintiff's constitutional rights under the First, Fourth and Fourteenth amendments to the United States Constitution pursuant to 42 U.S.C. 1983 and rights secured under the Stored Communications Act, Computer Fraud and Abuse Act and the Wiretap Statutes. Subject matter jurisdiction is founded upon 28 U.S.C. 1331, which gives district courts jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States.

5. Jurisdiction also is based on diversity considerations. The plaintiff resides in Michigan. The defendants that are named in this complaint reside in Pennsylvania. The amount in controversy without interests and costs exceeds the sum or value specified in 28 U.S.C. 1332.

6. Plaintiff further invokes supplemental jurisdiction of this court pursuant to 28 U.S.C. 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of the court that they form part of the same case or controversy.

Common Factual Allegations

7. In October 2014 the plaintiff discussed several issues that she had experienced with James Shaw related to his role as placement director for the philosophy department with Anil Gupta, who was currently serving as chair of the department. Professor Shaw was being considered for tenure, and as part of this process Professor Gupta had asked current and former graduate students for feedback on their experiences with him. Among other issues, the plaintiff told Professor Gupta that she did not believe Professor Shaw had given some of the individuals who were planning to apply for academic jobs that year adequate time to revise their application materials; that she believed Professor Shaw had read her teaching evaluations; and that, in the presence of other job candidates, Professor Shaw had implied that she should not use one of her letters of recommendation. Professor Gupta told the plaintiff that he would discuss these issues with Professor Shaw. He also read the letter that the plaintiff believed Professor Shaw had referred to and told her that she should include this letter with her job applications.

8. Later in October the plaintiff had a practice job interview with Professor Shaw and two other faculty members. Professor Shaw did not tell the plaintiff that other individuals might be listening to the interview, but after it was completed one of the other faculty members implied that at least one faculty member from another university had done so. He told her that the people at Stanford would love to have her around but are afraid that she won't publish. During the interview itself, Tom Ricketts told Professor Shaw that the plaintiff had been raped.

9. In April 2015 the plaintiff attended a meeting that Professor Shaw had convened for individuals who were planning to apply for jobs during the next academic year. At that point the plaintiff had not had any job interviews and, to her knowledge, was one of perhaps only two women during the past fifteen years who had been in this position. During this meeting Professor Shaw discussed part of the content of one of the plaintiff's letters of recommendation, which are supposed to remain confidential, and made a number of negative claims about her. For example, he claimed that the reason he was going to be the placement director during the next academic year was that no other faculty member wanted to place her. He also said that the reason he asked individuals who had not had interviews so far to meet with their dissertation committee members earlier that semester was that he did not believe they should pursue academic careers.

10. Before the meeting in April 2015, and before the plaintiff had learned the results of all of her job applications, she met a student who had audited a class that she had taught a few years before. He told the plaintiff that the reason he had taken the class was that they 'wanted [him] to keep an eye on' her; that they also had asked him to keep an eye on another graduate student who had since been transferred to another program in the university; and that the plaintiff would not be getting a job, although she might be able to find a temporary position.

11. During March 2015 there were two other instances in which faculty associated with the department revealed personal information about the plaintiff or made false claims about her. On March 6, before a widely attended public lecture, a professor from the Massachusetts Institute of Technology claimed that the plaintiff has a disability; implied that the plaintiff had plagiarized a book that she has not read; and stated that a former

4

professor of hers believes that she lacks the social skills needed to succeed in an academic career. Later that month, after the plaintiff had spoken with an attorney about some of the problems that she had been experiencing, Jennifer Whiting told the members of a class that the plaintiff had been auditing, among other things, that she was not receiving assistance from law enforcement. She also made comments that led the plaintiff to believe that she and other members of the faculty were aware of and perhaps involved in at least some of the issues that will be described in a document to be placed under seal.

12. The events that took place in March and April 2015 were similar to an incident that occurred in January 2013. During a lecture by an individual who was being considered for a position in the department, faculty members made a number of false claims that seemed to be about the plaintiff, including but not limited to the following: she had stolen $100 from a former employer, she had dated a former boyfriend to advance her career and she should have married another former boyfriend because he was about to be deported. They also made a number of claims about the plaintiff's medical history and financial situation and the plaintiff's relationships with her friends and other faculty members at the university. Moreover, they suggested that they had engaged in other activities that would constitute an invasion of privacy, such as reading her diary and email messages that she had exchanged with a faculty member at another university. Although the professor that the plaintiff contacted after this discussion claimed that it was not about her, the faculty did not convey this information to at least some of the graduate students who had attended the lecture; one of them asked during the meeting in April 2015 whether all of the claims that were made during the discussion were true.

13. There also is a possibility that the faculty gave the plaintiff false information about the letters of recommendation that she used for her job applications during the 2015-2016 academic year. Although applicants are not allowed to read these letters, the placement director or another member of the faculty are permitted to do so. In September 2015 the plaintiff asked another faculty member to read them, in light of the problems that she had experienced with Professor Shaw during the previous academic year. Although the faculty member told the plaintiff that all of the letters were 'excellent' or 'very, very good,' in February 2016 she met with a professor at the Massachusetts Institute of Technology who implied that this was not the case. During one of her interviews in the fall of 2015, a faculty member at another university also suggested that there had been negative information conveyed about her by a faculty member at the University of Pittsburgh.

Wherefore, Plaintiff requests this court and the finder of fact to enter a judgment in plaintiff's favor against all defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial and seeks against the defendants all appropriate damages arising out of law, equity and fact for each or all of the above counts where applicable and hereby requests that the trier of fact award the plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the plaintiff is entitled, and all other relief arising out of law, equity and fact.

Date: March 6, 2017

*Jane Doe*

1615 Ridgewood Drive

East Lansing, Michigan 48823

(517) 337-9314